# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2011

No. 10-50612

Lyle W. Cayce
Clerk

USPPS, LTD.,

Plaintiff–Appellant

v.

AVERY DENNISON CORPORATION; RENNER, OTTO, BOISELLE & SKLAR, L.L.P.; NEIL DUCHEZ, Individually,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This suit, involving state-law claims of fraud and breach of fiduciary duty in connection with a patent application, reaches us for a third time. We most recently reversed the district court's dismissal of the case as time-barred at the pleading stage and remanded for further factual development. *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842 (5th Cir. 2009) (per curiam) (unpublished). Plaintiff–Appellant USPPS, Ltd. ("USPPS") now appeals the district court's grant of summary judgment in favor of Defendants–Appellees Avery Dennison Corp. ("Avery"); Renner, Otto, Boiselle & Sklar, L.L.P. ("Renner"); and Neil DuChez. The district court held that there was no genuine

No. 10-50612

dispute of material fact as to whether USPPS's claims were time-barred such that the defendants were entitled to judgment as a matter of law, and that in the alternative there was no genuine dispute of material fact as to the causation elements of USPPS's claims. We requested supplemental briefing on the issue of whether exclusive appellate jurisdiction rests in the United States Court of Appeals for the Federal Circuit under 28 U.S.C. §§ 1295(a) and 1338(a). After reviewing the record, we conclude that this case raises a substantial issue of patent law such that we lack jurisdiction over the appeal, and we order the appeal transferred to the Federal Circuit.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Facts

The Supreme Court has explained that our assessment of whether this Circuit or the Federal Circuit has jurisdiction over the appeal must be made by reference to the allegations made in the plaintiff's "well-pleaded complaint"; that is, "from what necessarily appears in the plaintiff's statement of his own claim in the [complaint], unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (citation and quotation marks omitted). We therefore limit our recitation of the facts to those relevant to this inquiry.

USPPS filed suit in federal district court against Avery; Avery's law firm, Renner; and one of Renner's partners, Neil DuChez, on the basis of diversity jurisdiction. The dispute stems from the efforts of USPPS and its owner and founder, Joe Pat Beasley, to obtain a patent for an invention of Beasley's related to personalized postage stamps.

In 1999, Beasley filed a patent application with the United States Patent and Trademark Office ("PTO"). While the patent application was pending, Beasley negotiated a licensing and manufacturing contract with Avery. In

2

No. 10-50612

March 2001, the PTO approved Beasley's patent application and notified him that it would issue the patent upon payment of the requisite fees. In May 2001, Beasley and Avery entered into an agreement under which Avery agreed to assume responsibility for prosecuting Beasley's patent application and to pay all related fees and expenses. Beasley subsequently revoked all previous powers of attorney and appointed attorneys from Renner, Avery's law firm, to act on his behalf. USPPS's complaint alleges that Renner never disclosed to Beasley or anyone at USPPS that the firm did not represent Beasley and held a higher loyalty to Avery's interests.

In June 2001, Renner, acting pursuant to Beasley's power of attorney, formally abandoned Beasley's original patent application and submitted a second application pursuing more claims. In August 2001, USPPS and Avery entered into an agreement under which Avery would pay USPPS a royalty on sales of personalized postage stamps. In mid-2002, the PTO rejected the patent applications. Renner filed responses, but the PTO again rejected the applications. Avery notified USPPS that there was no hope that the applications could be revived by additional claim language. Finally, on May 14, 2003, Renner notified Avery and USPPS that the applications had been abandoned. In 2004, Avery notified USPPS that it intended to sell personalized postage stamps to third parties without further payment of royalties after the royalty agreement expired by its own terms.

USPPS's complaint contends that Renner's representation of Avery created a conflict of interest with its representation of Beasley and USPPS in the patent-prosecution process. Specifically, USPPS argues that Avery benefitted from the rejection of the patent application because Avery could produce the stamps without paying royalties once the patent was rejected. Neither Avery nor Renner supposedly disclosed this conflict to USPPS.

**B.    Prior Appeals**

This lawsuit was preceded by a nearly identical one filed with Beasley named as the plaintiff.  The district court dismissed that case for lack of standing after it was discovered that Beasley had previously assigned all his intellectual property rights to USPPS.  The district court also denied Beasley's motion to add USPPS as a party and sanctioned him for concealing the assignment.  Beasley appealed but filed no briefing, and the clerk of this court entered an order dismissing the appeal for failure to prosecute.  *See Beasley v. Avery Dennison Corp.*, No. 07-51311, 2008 U.S. App. LEXIS 28075, at *1 (5th Cir. Feb. 7, 2008) (citing 5TH CIR. R. 42.3).

The lawsuit was then refiled in USPPS's name, including additional allegations based on information learned in the course of discovery in the prior suit.  The district court dismissed the claims as time-barred.  USPPS appealed, and we reversed and remanded for further factual development, concluding that the discovery rule or fraudulent-concealment doctrine might apply on the face of the complaint.  *USPPS*, 326 F. App'x at 851.  The parties made no arguments concerning jurisdiction in that appeal, and our prior opinion makes no mention of the basis for the court's jurisdiction other than to describe the complaint as asserting that the case was "based on diversity of citizenship." *Id.* at 843.

## II.  STANDARD OF REVIEW

"We must always be sure of our appellate jurisdiction and, if there is doubt, we must address it, *sua sponte* if necessary." *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999).  Whether an appeal properly belongs in this Court or the Federal Circuit is such a question of appellate jurisdiction.  *See* 28 U.S.C. § 1295(a).  If we conclude that our jurisdiction is lacking, we cannot reach the merits of the appeal.  *See Christianson*, 486 U.S. at 818.

No. 10-50612

## III.  DISCUSSION

"Under 28 U.S.C. § 1295(a), the Federal Circuit has exclusive jurisdiction of an appeal where the district court's jurisdiction was based, in whole or in part, on 28 U.S.C. § 1338." *NaTec, Inc. v. DeTer Co.*, 28 F.3d 28, 29 (5th Cir. 1994) (per curiam).  Where an appeal over which the Federal Circuit has exclusive jurisdiction is taken to this Court in error, we are directed by statute to, "if it is in the interest of justice, transfer such . . . appeal to" the Federal Circuit. *See* 28 U.S.C. § 1631.  The Supreme Court has clarified that if such a transfer is not "in the interest of justice," our sole alternative is to dismiss the appeal.  *See Christianson*, 486 U.S. at 818.  All the parties agree that if we lack jurisdiction, then transfer rather than dismissal best serves the interest of justice.  We agree that "a balancing of equities weighs in favor of transfer because a new appeal . . . at this point would be barred as untimely and we find nothing to indicate that the [appellants] acted in bad faith by filing the instant appeal" with this Court. *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 292 (5th Cir. 1997).

We therefore must transfer this appeal to the Federal Circuit if the district court's jurisdiction was based, even in part, on § 1338.  In relevant part, § 1338(a) grants exclusive jurisdiction to the federal district courts over "any civil action arising under any Act of Congress relating to patents."  In *Christianson*, the Supreme Court summarized its precedents delimiting the scope of this language:

> [I]n order to demonstrate that a case is one "arising under" federal patent law the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws. . . . [Thus] § 1338(a) jurisdiction . . . extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.

> . . . Under the well-pleaded complaint rule, as appropriately adapted to § 1338(a), whether a claim "arises under" patent law must be determined from what necessarily appears in the plaintiff's statement of his own claim in the [complaint], unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

486 U.S. at 807–09 (internal citations and quotation marks omitted). In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, the Supreme Court clarified the role that federalism concerns should play in this analysis: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" 545 U.S. 308, 314 (2005).[1]

This is therefore a two-part inquiry: first, whether the case requires deciding an issue of patent law; and second, where a patent issue must be decided, whether that issue rises to the level of creating a substantial federal interest such that the Federal Circuit has exclusive appellate jurisdiction. In evaluating these questions, we frequently look to the jurisdictional decisions of the Federal Circuit, *see, e.g.*, *Scherbatskoy*, 125 F.3d at 291; *Du Val Wiedmann, LLC v. InfoRocket.com, Inc.*, 374 F. App'x 482, 484 (5th Cir. 2010) (per curiam)

---

[1] As *Christianson* explains, the fact that federal jurisdiction is clearly proper under some theory—diversity of citizenship under 28 U.S.C. § 1332 or patent law under § 1338—does not diminish the importance of this federalism inquiry in assessing whether § 1338 applies. *See* 486 U.S. at 808–09 n.2 ("[I]n this case our interpretation of § 1338(a)'s 'arising under' language will merely determine which of two federal appellate courts will decide the appeal. . . . Since, however, § 1338(a) delineates the jurisdiction of the federal and state courts over cases involving patent issues, the phrase . . . 'masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.'" (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8 (1983))). In other words, because our interpretation of § 1338 here will govern the division of federal and state jurisdiction no less than the division between the Federal Circuit and ours, we must be sensitive to issues of federalism that would be present were the alternative to § 1338 jurisdiction in this case be a remand to state court rather than consideration of the merits by this Circuit.

No. 10-50612

(unpublished), although we are not bound by them. *See Singh v. Duane Morris LLP*, 538 F.3d 334, 340 (5th Cir. 2008).

## A.    Federal Circuit Cases

Several opinions of the Federal Circuit applying *Christianson* suggest that USPPS's claim "arises under" patent law within the meaning of § 1338. In *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262 (Fed. Cir. 2007), and its companion case *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007), the Federal Circuit held that a Texas state-law claim of attorney malpractice in a patent infringement case "arises under" patent law for purposes of § 1338. In *Air Measurement Technologies*, the court explained its reasoning thus:

> Under Texas state law, the elements of a malpractice claim are (1) an attorney owed plaintiff a duty stemming from the attorney-client relationship, (2) the attorney breached that duty, (3) the breach proximately caused plaintiff's injuries, and (4) damages. Because [the plaintiff]'s malpractice claim stems in part from unsuccessful prior litigation, [the plaintiff] must establish that they would have prevailed in the prior litigation but for [the defendant law firm]'s negligence that compromised the litigation. This is called the "case within a case" requirement of the proximate cause element of malpractice. . . . Because [in this case] proof of patent infringement is necessary to show [the plaintiff] would have prevailed in the prior litigation, patent infringement is a "necessary element" of [the plaintiff]'s malpractice claim and therefore apparently presents a substantial question of patent law conferring § 1338 jurisdiction.

504 F.3d at 1268–69 (internal citations omitted) (quoting *Christianson*, 486 U.S. at 809).

In *Immunocept*, decided on the same day as *Air Measurement Technologies*, the Federal Circuit addressed the federalism question that *Grable* reemphasized in a case presenting nearly identical issues to *Air Measurement Technologies*. The *Immunocept* plaintiffs filed suit against their law firm

7

No. 10-50612

alleging a Texas state-law claim of attorney malpractice in prosecuting a patent on their behalf, specifically claiming a drafting mistake. Echoing *Air Measurement Technologies*, the court held that,

> [b]ecause it is the sole basis of negligence, the claim[ed] drafting error is a necessary element of the malpractice cause of action. As such, there is no way [the plaintiffs] can prevail without addressing claim scope. The parties, however, dispute whether there was a drafting mistake. Therefore, if determining claim scope involves a substantial question of federal law that passes the federalism muster of *Grable*, there is § 1338 jurisdiction over the malpractice claim under both *Christianson* and *Grable*.
>
> . . . .
>
> Because patent claim scope defines the scope of patent protection, we surely consider claim scope to be a substantial question of patent law. As a determination of patent infringement serves as the basis of § 1338 jurisdiction over related state law claims, so does a determination of claim scope.

504 F.3d at 1285 (internal citations omitted). The court then briefly turned to the propriety of federal jurisdiction as a question of federalism, an issue not explicitly addressed in *Air Measurement Technologies*:

> Claim scope determination is a question of law that can be complex in that it may involve many claim construction doctrines. Litigants will benefit from federal judges who are used to handling these complicated rules. Additionally, Congress'[s] intent to remove non-uniformity in the patent law, as evidenced by its enactment of the Federal Courts Improvement Act of 1982, is further indicium that § 1338 jurisdiction is proper here.

*Id.* at 1285–86 (citing Pub. L. No. 97-164, 96 Stat. 25) (other internal citations omitted).

Both *Air Measurement Technologies* and *Immunocept* thus concluded that the exercise of § 1338 federal jurisdiction was proper over state-law claims of malpractice where the alleged malpractice required the court to construe a patent. In *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355 (Fed. Cir. 2010),

8

*cert. denied*, 131 S. Ct. 118 (2010), the Federal Circuit extended this doctrine to a question of patentability where no patent had actually issued. In *Davis*, the plaintiff sued her attorney for malpractice under Ohio state law, alleging that the lawyer had failed to timely file her patent application, resulting in the loss of patent protection and the withdrawal of her investors' funding. The court held that because the plaintiff in *Davis* was obliged to "prove, by a preponderance of the evidence, that she would have obtained patents on her inventions but for [her attorney]'s alleged negligence . . . patent law is a necessary element of one of the legal malpractice claims presented in [the] complaint, and the district court properly exercised jurisdiction pursuant to 28 U.S.C. § 1338(a)." *Id.* at 1361–62.

The relevant facts of this case are similar to those in *Davis*, though there are of course some distinctions. Here, USPPS alleges that Renner's misconduct constituted a breach of fiduciary duty that ultimately led to USPPS's loss of patent protection in its invention.[2] Under Texas law, a cause of action for breach of fiduciary duty may take one of two forms: if the suit seeks damages, then the plaintiff must prove duty, breach, actual injury, and causation; whereas if the suit seeks an equitable forfeiture of the fee paid to the fiduciary, then the plaintiff need only prove duty and breach to recover. *See, e.g.*, *Si Kyu Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 635 n.1 (Tex. App.—El Paso 2009, pet. denied) (citing *Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999)). USPPS's complaint does not seek fee forfeiture; indeed, it does not even allege that USPPS ever paid Renner or DuChez a fee that could be forfeited. Rather, USPPS explicitly seeks

---

[2] Specifically, USPPS's theory of injury is that the defendants' failure to disclose their lack of loyalty to USPPS caused it to have its patent ultimately denied by the PTO: "[w]ith patent counsel representing Plaintiff and loyal to it at least some of the claims in the patent applications could have overcome the PTO's rejections," and "[i]f Beasley and USPPS had patent counsel loyal to them they would today have a patent with at least some claims allowed."

damages for the breach in the amount of lost revenues and royalties that it alleges it would have earned had the patent issued. Proof of "injury and causation [is] . . . required when a plaintiff seeks to recover damages for a breach of fiduciary duty," *Si Kyu Kim*, 286 S.W.3d at 635 n.l, and USPPS would therefore have to prove both in order to prevail on the breach of fiduciary duty claim set out in its complaint. As in *Davis*, USPPS cannot prove causation without proving the patentability of its invention. Otherwise, the cause of USPPS's loss of patent protection would be based on the simple fact that its invention could not be patented, and not on any breach of fiduciary duty by Renner or DuChez.[3]

USPPS argues that the validity of the patent is *not* necessary to the overall success of its claims. Rather, it argues that even if its patent was eventually found invalid, with better counsel it would have received royalties in the time between the date of patent issuance and when the patent was eventually found invalid. This assumes, of course, that USPPS's patent would have issued at all had USPPS had loyal counsel, a question that necessarily involves deciding an issue of patent law. USPPS also ignores the fact that it cannot recover from Renner and DuChez on its state-law claims for breach of fiduciary duty and fraud if their misconduct, no matter how egregious, did not injure USPPS. USPPS's stated theory of injury is that "[m]illions of

---

[3] Comparing the requirement of proof of causation in the present case to the requirement of proof of causation in a malpractice case helps to clarify this point. The Texas Supreme Court has explained that, in a legal malpractice case, the reason that the client must prove that he would have succeeded in the underlying action is simply because the plaintiff must prove proximate cause. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 969, 708 (Tex. 1996) ("To prove proximate cause, the client must show that his lawsuit or defense would have been successful 'but for' the attorney's negligence." (quoting *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd))). As discussed above, USPPS must similarly prove proximate cause in its breach of fiduciary duty action, *see Si Kyu Kim*, 286 S.W.3d at 635 n.1, and patentability thus becomes an element of USPPS's affirmative case just as in *Davis*.

personalized postage stamps have been manufactured" that are "an infringement against which the patent would have afforded a right of recovery of royalties by USPPS." Without a valid patent—and indeed, without also showing other personalized postage stamps would have *infringed* on its patent (another substantial question of patent law that likely would have to be decided)—USPPS has no injury. USPPS's claims therefore depend upon resolving at least one issue of patent law in its favor.

It therefore seems clear that,were we to merely apply the Federal Circuit's case law to this appeal, our inquiry would be at an end. Two complications preclude us from that simple resolution, however. First, our Circuit has expressed some skepticism of *Air Measurement Technologies*, *see Singh*, 538 F.3d at 340, and second, we must address USPPS's contention that the prior panel's decision on the merits at the motion-to-dismiss stage constitutes the "law of the case" that jurisdiction is proper before this court.

## B.     Fifth Circuit Cases

In *Singh*, we considered whether federal question jurisdiction existed over a malpractice suit between nondiverse parties. The plaintiff had filed suit in Texas state court alleging malpractice in a prior federal trademark lawsuit. The defendant removed to federal court, contending that jurisdiction was proper in federal court in part on the basis of § 1338(a) and *Air Measurement Technologies*. The defendant reasoned that,because the plaintiff would be required to prove that he would have succeeded on his federal trademark claim but for the alleged malpractice, the suit raised sufficiently substantial questions of federal trademark law to create jurisdiction under § 1338. On appeal, we vacated the judgment entered and rendered a judgment of dismissal for want of jurisdiction, holding that the case did not meet the standard for federal jurisdiction. We explained that the extension of "federal jurisdiction over this state-law malpractice claim would upend the balance between federal and state judicial

responsibilities" in violation of the directive of *Grable*. 538 F.3d at 339.  We emphasized that "[l]egal malpractice has traditionally been the domain of state law," *id.*, and that the federal interest in trademark cases was not sufficiently substantial to justify such a "usurpation of state authority in an area in which states have traditionally been dominant," *id.* at 340.

*Singh* expressly "decline[d] to follow or extend" *Air Measurement Technologies* and offered two reasons for doing so.  *Id.* First, because the Federal Circuit "did not consider the . . . federal interest and the effect on federalism" in its opinion.[4]  *Id.*  Second, because *Air Measurement Technologies* was a patent case, we suggested without expressing an opinion that "[i]t is possible that the federal interest in patent cases is sufficiently more substantial, such that it might justify federal jurisdiction," especially in light of the fact that patent cases—unlike trademark cases—are subject to the *exclusive* jurisdiction of the federal courts under § 1338(a).  *Id.*

We are now squarely faced with the question of whether this state-law tort claim presenting questions of patent law involves a sufficiently substantial federal interest to permit federal jurisdiction over a state-law tort. We hold that it does.

Our decision is guided by both (1) the strong federal interest in the "removal [of] non-uniformity in the patent law" that *Immunocept* explains exclusive federal jurisdiction was intended to ensure, 504 F.3d at 1285, and (2) our holding in *Scherbatskoy*, 125 F.3d at 291.  In *Scherbatskoy*, we ordered a breach of contract case transferred to the Federal Circuit after determining that "resolution of the [plaintiffs'] substantive claim implicates the federal patent laws" because "determining whether [the defendant] infringed the [plaintiffs'] patents is a necessary element to recovery."  *Id.*  The opinion offers no further

---

[4] As we noted above, though *Air Measurement Technologies* is silent as to the *Grable* question of federalism, *Immunocept* provides more substantive engagement with that issue.

analysis of the federalism question, but it is nevertheless binding on us. We see no basis for finding any less of a federal interest in patent law in the present case than in *Scherbatskoy*. In so holding, we conform both to *Singh*'s requirement of balancing the federal and state interests involved and *Scherbatskoy*'s implicit recognition of the special federal interest in patent law.[5]

## C.    Law of the Case

Finally, we address USPPS's contention that our prior consideration of the merits of its appeal at the motion-to-dismiss stage without *sua sponte* disclaiming jurisdiction constitutes law of the case that jurisdiction is proper. We hold that it does not.

"The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1987). The rule, though generally adhered to, is not inflexible:

> [T]he law-of-the-case doctrine merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.

*Christianson*, 486 U.S. at 817 (internal citations and quotation marks omitted).

---

[5] As in *Scherbatskoy*, "[i]t is irrelevant that the summary judgment appealed did not address the patent issue for purposes of section 1338 and section 1295 jurisdiction." 125 F.3d at 291. As discussed at length above, the relevant question is instead whether "the complaint includes allegations that federal patent law creates the cause of action or federal patent law is a necessary element of the claim," *id.* (citing *Christianson*, 486 U.S. at 808), because such a case would entail jurisdiction under § 1338 at least in part. And *every* appeal in which jurisdiction is based "in whole or in part" on § 1338 must be heard exclusively in the Federal Circuit, *NaTec*, 28 F.3d at 29, regardless of whether a patent issue is in fact involved in the appeal.

No. 10-50612

As to its scope, the doctrine "applies only to issues that were decided in the former proceeding but not to questions which might have been decided but were not." *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978) (internal citations omitted). However, the doctrine does encompass "things decided by necessary implication as well as those decided explicitly." *Id.* We have previously held that there is no "jurisdiction exception" to the law-of-the-case doctrine. *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272–73 (5th Cir. 1999). No one contends that the propriety of jurisdiction in this Circuit was actually argued to the prior panel or that the prior panel's decision actually addresses that question. Indeed, the prior panel opinion makes no statement announcing its jurisdiction over the appeal. Rather, the question presented here is whether jurisdiction was "decided by necessary implication" simply by the prior panel hearing and deciding the earlier appeal.

Where the question of jurisdiction was actually raised and argued before the prior panel and the panel subsequently exercised jurisdiction without explanation in its opinion, it is clear enough that "the necessary assumption is that the prior panel found subject matter jurisdiction present," and the ruling constitutes law of the case. *Trans World Airlines, Inc. v. Morales*, 949 F.2d 141, 144 (5th Cir. 1991) (per curiam). Similarly, in cases decided prior to the Supreme Court's rejection of the doctrine of hypothetical jurisdiction in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–102 (1998),[6] we had held that, if the prior panel "did not address the issue of subject matter jurisdiction," then the panel "cannot be regarded as having ruled on it." *Todd Shipyards*, 763 F.2d at 751 n.10. We have not been faced with the question of whether, after

---

[6] In *Steel Co.*, the Court emphatically disapproved of the practice of the exercise of "hypothetical jurisdiction" by federal courts, 523 U.S. at 101, and held that Article III courts must always resolve true questions of jurisdiction before proceeding to the merits. *See id.* at 93–102.

*Steel Co.*—which made the determination of jurisdiction a necessary antecedent to a ruling on the merits—the undisputed exercise of jurisdiction by a prior panel over a case constitutes a ruling "by necessary implication" on the question of jurisdiction so as to constitute law of the case.

The Supreme Court's decision in *Steel Co.* itself offers some insight on this point. There, in addressing a different issue, the Court rejected a prior decision that did not address jurisdiction as nonprecedential on the question of whether jurisdiction was proper:

> The short of the matter is that the jurisdictional character of the [issue involved in the prior case] made no substantive difference (nor even any procedural difference that the Court seemed aware of), had been assumed by the parties, and was assumed without discussion by the Court. We have often said that drive-by jurisdictional rulings of this sort . . . have no precedential effect.

523 U.S. at 91. Our Court articulated a similar rule in *Kershaw v. Shalala*, in which we held that "our exercise of jurisdiction in [a prior case] [did not] constitute a binding precedent, . . . because the issue was neither raised by the parties nor addressed by the Court." 9 F.3d 11, 13 n.3 (5th Cir. 1993). Following this logic, we see no reason to accord a prior panel's ruling the discretionary status of law of the case where the Court's resolution of that issue would not even constitute binding precedent had it been decided in a separate appeal. *Cf. Trans World Airlines*, 949 F.2d at 144 ("While use of law of the case doctrine is not mandatory, a court is more likely to apply the doctrine when the prior opinion was apparently well-considered . . . .").

We therefore decline to defer to the prior panel's exercise of jurisdiction as correct where the issue was neither raised by the parties nor addressed by the court. The law-of-the-case doctrine presents no bar to transfer.

## IV.  CONCLUSION

The federal courts are courts of limited jurisdiction and are tasked with the duty to continually, and *sua sponte*, assess their jurisdiction.  This case raises issues of patent law, and those issues are substantial because of the special federal interest in developing a uniform body of patent law in the Federal Circuit as recognized in *Scherbatskoy* and expressed by Congress's grant of exclusive appellate jurisdiction over patent cases to that court.  We therefore lack jurisdiction over the appeal.  The prior panel's unstated assumption of jurisdiction is not the "law of the case" and does not bar us from ensuring that the statutory directive is followed and the federal interest is vindicated in this case.

We therefore order this appeal transferred to the United States Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1631.  The clerk of this Court is directed to transmit the record, briefs, and other documents relating to this appeal to the clerk of the Federal Circuit.

APPEAL TRANSFERRED.