**Opinion issued July 26, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00341-CV

————————————

## IN RE HAYNES AND BOONE, LLP AND
## PATRICK L. HUGHES, Relators

———————————————————————————————————

### Original Proceeding on Petition for Writ of Mandamus

———————————————————————————————————

## O P I N I O N

This original proceeding concerns a legal malpractice claim relating to the

handling of an antitrust matter.[1] The relators, Haynes and Boone, LLP and Patrick

---

[1] At the time relators filed their mandamus petition, the underlying case was styled *Rx.com, Inc. and Joe S. Rosson v. John M. O'Quinn & Associates, PLLC d/b/a The O'Quinn Law Firm, John M. O'Quinn & Associates, L.L.P., Laminack, Pirtle & Martines, L.L.P., Richard M. Laminack, Thomas W. Pirtle, Haynes & Boone, L.L.P., and Patrick Hughes*, No. 2010-66863, in

L. Hughes, are defendants in the malpractice suit. The real parties in interest, Rx.com, Inc. and its founder Joe S. Rosson, filed the suit alleging that the relators (and others) harmed them by failing to timely file an antitrust suit within the limitations period.

The relators contend that the suit presents embedded federal issues in the form of Sherman Act claims which must be proved to prevail on the malpractice cause of action and thus constitute a "case within the case." These federal issues are the basis for relators' invocation of exclusive federal subject-matter jurisdiction over the malpractice claim. They thus argue that Texas state courts lack subject-matter jurisdiction to entertain such claims. These arguments were presented in a plea to the jurisdiction, which the trial court denied. The relators then filed a petition for writ of mandamus to seek review of that ruling.

We conclude that the trial court correctly denied the plea and that Texas courts may exercise jurisdiction over legal malpractice claims related to antitrust matters. Accordingly, we deny the petition.

**Background**

Prior to the filing of the malpractice suit at issue in this original proceeding, Rx.com filed an antitrust complaint in federal district court against various pharmacy benefit manager defendants. In addition to state-law claims that were

the 80th Judicial District of Harris County, Texas. The respondent is the Honorable Larry Weiman.

2

later abandoned, the complaint included three causes of action under the Sherman Act: agreement in restraint of trade in violation of Section 1; conspiracy to monopolize in violation of Section 2; and attempted monopolization in violation of Section 2. *See* 15 U.S.C. §§ 1, 2. The antitrust suit was dismissed on limitations grounds, and the Fifth Circuit Court of Appeals affirmed that judgment on appeal. *See Rx.com v. Medco Health Solutions, Inc.*, 322 Fed. Appx. 394 (5th Cir. 2009).

The real parties in interest sued Rx.com's former lawyers, including the relators, for legal malpractice in connection with the failure to timely file the antitrust suit. The petition was originally filed in a Texas state district court. The defendants removed the case to federal court, arguing that federal-question jurisdiction applied to the legal malpractice claims because of embedded federal questions relating to the original antitrust claims. *See Rx.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790, 793 (S.D. Tex. 2011). The federal district court analyzed the question of whether the legal malpractice claims were ones "arising under" federal law, 28 U.S.C. § 1331, applying the standard articulated by the United States Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005), and considering whether the malpractice claims "necessarily raise a stated federal issue [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

*Rx.com*, 766 F. Supp. 2d at 794 (quoting *Grable*, 545 U.S. at 314, 125 S. Ct. at 2368). Relying in significant measure upon the Fifth Circuit's application of the *Grable* standard to a legal malpractice claim in *Singh v. Duane Morris LLP*, 538 F.3d 334 (5th Cir. 2008), the federal court concluded that two of the necessary elements—a substantial federal interest and a lack of disruption to the balance of federal and state judicial responsibilities—were not present. Accordingly, the federal district court found that federal-question jurisdiction did not exist, and the case was remanded to state court. *See Rx.com*, 766 F. Supp. 2d at 797.

Following the remand to state court, two new opinions were issued in other cases, which the relators contend provided supervening authority to support their contention that the case belongs in federal court. In *USPPS, Ltd. v. Avery Dennison Corp.*—a case in which federal subject-matter jurisdiction was apparently undisputed due to the diversity of the parties—the Fifth Circuit applied the *Grable* test to determine that a state-law legal malpractice claim arose under federal patent law so as to invoke the exclusive appellate jurisdiction of the Federal Circuit.[2] Accordingly, the *USPPS* appeal was transferred to the Federal Circuit.[3]

---

[2] *See USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 277–82 (5th Cir. 2011); 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents . . . .").

Then the Supreme Court of Texas held, in *Minton v. Gunn*, that the federal courts have exclusive subject-matter jurisdiction over a malpractice claim arising out of legal representation in a patent infringement action. *See* 355 S.W.3d 634, 646 (Tex. 2011), *petition for cert. filed*, No. 11-1118 (U.S. Mar. 9, 2012). The *Minton* case originated in state court and was dismissed on a motion for summary judgment. *See id.* at 638. However, in addition to granting federal jurisdiction over cases arising under federal patent law, 28 U.S.C. § 1338(a) also specifically prohibits state courts from exercising jurisdiction over the same category of cases.[4] The claimant thus raised a subject-matter jurisdiction objection on appeal, and that argument was ultimately vindicated by the Supreme Court, which concluded,

---

[3]   *See USPPS*, 647 F.3d at 284. Notably, two judges of the Federal Circuit subsequently concurred in the judgment affirming the trial court in *USPPS* while noting their disagreement with their court's precedents applying *Grable*, which they characterized as turning what "would otherwise be a 'clearly wrong' transfer decision into one that is 'plausible,'" thus requiring their court "to accept the transfer and resolve the merits of the appeal." *Id.* at 1350 (O'Malley, J., concurring) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817–19, 108 S. Ct. 2166, 2178–79 (1988)).

[4]   *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . ."). This statute, expressly depriving state courts of jurisdiction over claims arising under federal patent law, was amended in 2011. *See* Act of Sept. 16, 2011, § 19(a), 125 Stat. 331. The prior version of the statute provided: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." Act of June 25, 1948, ch. 646, 62 Stat. 931.

"based upon the specific facts of this case,"[5] that the embedded federal question "triggered exclusive federal patent jurisdiction," requiring dismissal of the case without considering its merits. *Minton*, 355 S.W.3d at 646-47.

Relying primarily on *USPPS* and *Minton*, the relators re-urged their arguments in the trial court by filing a plea to the jurisdiction. As part of the argument presented to the trial court, the relators contended that "determining whether Rx.com would have prevailed will entail litigation of the full panoply of factual and legal issues attending to a Sherman Act claim." The trial court denied the plea,[6] and the relators filed their mandamus petition, seeking relief from the trial court's continuing exercise of subject-matter jurisdiction over the case.

---

[5] The Supreme Court specifically disavowed a broad interpretation of its holding such that "all legal malpractice suits arising out of patent litigation" might be considered "to fall under the exclusive patent law jurisdiction of the federal courts." *Minton v. Gunn*, 355 S.W.3d 634, 646 (Tex. 2011), *petition for cert. filed*, No. 11-1118 (U.S. Mar. 9, 2012). The Court indicated that "any state litigant asserting a legal malpractice action to recover for damages resulting from his patent attorney's negligence in patent prosecution or litigation must also satisfy all four elements of the *Grable* test to place his claim under exclusive federal jurisdiction." *Id*.

[6] The relators filed a motion in the trial court to stay proceedings pending our resolution of the mandamus petition, and in that context the parties disputed the significance of our request for a response to the relators' petition. Mandamus relief (other than temporary relief) cannot be granted unless the court receives or requests a response. TEX. R. APP. P. 52.4. But regardless of whether the court has preliminarily decided that a petition may be meritorious, a response often aids the efficient use of judicial resources by inviting the real party in interest to offer its own legal analysis and perspective of the challenged action. Accordingly, the mere request for a

## Analysis

A party requesting mandamus relief must meet two requirements. First, it must show that the trial court clearly abused its discretion. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding). Second, it must show that it has no adequate remedy by appeal. *Id.* at 135–36. The relators carry the burden of demonstrating their right to mandamus relief. *See Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding).

We will focus our analysis on the relators' contention that the trial court has abused its discretion by exercising subject-matter jurisdiction over this legal malpractice case. The relators' arguments rely on *USPPS* and *Minton*, as well as other cases involving legal malpractice in the patent-law context,[7] as precedents for applying the *Grable* standard to determine when a state-law cause of action "arises under" federal law because of an embedded federal issue.

---

response does not imply any preliminary judgment about the merits of the petition. Rule 52.8 does not suggest otherwise—that rule provides that "*[i]f the court is of the tentative opinion that relator is entitled to the relief sought or that a serious question concerning the relief requires further consideration . . . the court must request a response if one has not been filed.*" TEX. R. APP. P. 52.8(b)(1) (emphasis supplied).

[7] *E.g.*, *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007).

As explained below, the relators' argument wrongly assumes the relevance in this circumstance of the "arising under" standard as applied in *Grable* and its progeny. Because there is no nexus between the "arising under" standard and the question of whether federal courts have exclusive jurisdiction over the embedded federal antitrust issues, we reject relators' suggestion that the *Grable* standard provides the appropriate frame of analysis. Instead, applying the standard of *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S. Ct. 2870 (1981), we conclude that the legal authorities establishing federal jurisdiction to decide federal antitrust claims do not preclude state courts from exercising jurisdiction over state-law malpractice claims with embedded federal antitrust issues.

## I. *Grable* and its specific application relating to patent law

In *Grable*, the United States Supreme Court analyzed whether the claim presented in that case was one "arising under the Constitution, laws, or treaties of the United States" for purposes of federal-question jurisdiction as provided in 28 U.S.C. § 1331. The claim at issue was a suit to quiet title originally filed in state court, and it was subsequently removed to federal court on the grounds that the case presented a question of federal tax law. *Grable*, 545 U.S. at 311, 125 S. Ct. at 2366. If the case could have been originally brought in federal district court, then removal of the case from state court to federal court was proper under 28 U.S.C. § 1441(a). *See id*. at 312, 125 S. Ct. at 2366. Under *Grable*, in order for a state-

8

law claim with an embedded federal question to "aris[e] under the Constitution, laws, or treaties of the United States" such that federal courts have subject-matter jurisdiction over that claim pursuant to section 1331, the state-law claim must (1) raise a stated federal issue that is (2) actually disputed and (3) substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *See id.* at 314, 125 S. Ct. at 2368.

Because *Grable* is an application of the "arising under" standard of 28 U.S.C. § 1331, the rule articulated in that case has special application with respect to patent cases, as federal courts have exclusive jurisdiction over all cases "arising under" patent law pursuant to 28 U.S.C. § 1338(a), and the "arising under" language of that statute has been interpreted to apply in the same way that it does for purposes of section 1331.[8] Thus, the United States Court of Appeals for the Federal Circuit has applied the *Grable* standard to determine whether patent issues embedded within state-law legal malpractice claims arose under federal patent law, so as to permit federal courts to exercise jurisdiction over the claims.[9] The Federal

---

[8] *See Christianson*, 486 U.S. at 808–09, 108 S. Ct. at 2173–74; *Air Measurement*, 504 F.3d at 1271.

[9] In *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, a legal malpractice claim was removed from state court, and the plaintiffs appealed the interlocutory decision to deny a remand back to state court. *See* 504 F.3d 1262, 1265 (Fed. Cir. 2007). The federal district court

9

Circuit precedents in this area have concerned whether federal courts could exercise subject-matter jurisdiction over the state-law legal malpractice claims, and they have not been directly concerned with whether the state courts could exercise concurrent jurisdiction over such claims.

The authority of a state court to exercise jurisdiction over a legal malpractice claim involving patent issues was the central issue presented in *Minton v. Gunn.* *Minton* is procedurally distinguishable from the Federal Circuit precedents because it involved Texas state courts deciding whether a legal malpractice claim arose under federal patent law, not to determine whether a federal court could exercise jurisdiction over the claim, but to determine whether the state courts were forbidden from exercising jurisdiction over the claim. In contrast to section 1331, which merely describes an affirmative grant of power for federal courts to exercise

---

applied the *Grable* test to determine that legal malpractice claim arose under patent law for purposes of 28 U.S.C. § 1338(a). *See id*. at 1267. Because the Federal Circuit agreed that federal jurisdiction could be exercised pursuant to § 1338(a), the district court's refusal to remand the case was affirmed. *See id*. at 1273; *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Similarly, the Federal Circuit found that 28 U.S.C. § 1338(a) jurisdiction could be exercised over another legal malpractice claim involving federal patent issues in *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007).

jurisdiction over cases "arising under" federal law,[10] section 1338(a) both grants

power for federal courts to exercise jurisdiction over cases "arising under" patent

law[11] and also has a converse effect on the jurisdiction of state courts, which are

specifically forbidden from exercising jurisdiction over the same scope of claims.[12]

Thus the issue presented in *Minton* was not merely whether the federal courts were

authorized to exercise jurisdiction over the claim. That issue had to be considered,

but only as a necessary part of the analysis of whether the state courts were

prohibited by section 1338(a) from exercising jurisdiction over the claim. The

Supreme Court of Texas applied the *Grable* test and held in *Minton* that the

particular legal malpractice claim at issue arose under federal patent law. Because

federal jurisdiction is exclusive over claims arising under federal patent law, 28

U.S.C. § 1338(a), the state courts could not exercise subject-matter jurisdiction.

The relators in this original proceeding present yet a different scenario.

Their argument is similar to the issue presented in *Minton*, insofar as we are asked

---

[10]     *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[11]     *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.").

[12]     *See id*. ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.").

11

to decide whether the state courts are forbidden from exercising jurisdiction over a state-law legal malpractice claim because of an embedded federal question. However, the embedded federal issue in this case involves antitrust law instead of patent law. Accordingly, the *Grable* analysis is only relevant to this proceeding if, as in the context of patent law, state courts are forbidden to exercise jurisdiction over any claims "arising under" federal antitrust law.

## II.   Presumed concurrent jurisdiction of state courts

"The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78, 101 S. Ct. 2870, 2875 (1981). We begin our analysis with "the presumption that state courts enjoy concurrent jurisdiction." *Id*. at 478, 101 S. Ct. at 2875. Jurisdiction may be exclusively confined to the federal courts by either explicit or implicit Congressional directive. *See id*. Thus, the Supreme Court of the United States has held that "the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id*.; *see also Tafflin v. Levitt*, 493 U.S. 455, 459-60, 110 S. Ct. 792, 795 (1990).

12

Relators have produced no authority that Congress explicitly granted federal courts exclusive jurisdiction of all cases "arising under" the federal antitrust laws. Congress did grant federal district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a). In addition, the Clayton Act authorizes a private cause of action to be pursued in federal court for injury to "business or property by reason of anything forbidden in the antitrust laws," 15 U.S.C. § 15(a), including the specific right to seek "injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws," 15 U.S.C. § 26. With specific reference to the Clayton Act's authorization of injunctive relief to be obtained from "any court of the United States having jurisdiction over the parties," the Supreme Court has stated that "[t]his right to sue . . . is granted in terms which show that it is to be exercised only in a 'court of the United States.'" *Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287, 43 S. Ct. 106, 117 (1922). Subsequent cases have relied on *General Investment* for the proposition that federal antitrust claims are within the exclusive jurisdiction of the federal courts,[13] despite suggestions[14] that this rule appears to be

---

[13] *E.g.*, *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S. Ct. 1327, 1331 (1985); *see also Miller v. Granados*, 529 F.2d 393, 395 (5th Cir. 1976) ("[T]he jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive.").

at odds with the modern understanding that "[i]t is black letter law . . . that the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore*, 453 U.S. at 479, 101 S. Ct. at 2875–76; *see also Martinez v. California*, 444 U.S. 277, 283 n.7, 100 S. Ct. 553, 558 n.7 (1980).

The principle that "federal antitrust claims are within the exclusive jurisdiction of the federal courts" only has been suggested in connection with actual federal antitrust causes of action, and the relators have provided us no example of the rule ever being applied to the broader universe of all claims "arising under" federal antitrust law.[15] Nor have the relators demonstrated any

---

[14] *See, e.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 470–71, 110 S. Ct. 792, 801 (1990) (Scalia, J., concurring) (characterizing the analysis in *General Investment* as "less than compelling"); *Vill. of Bolingbrook v. Citizens Utils. Co.*, 864 F.2d 481, 484–85 (7th Cir. 1988) ("One may doubt whether in light of *Mitsubishi* [*Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3346 (1985)] antitrust is still an exclusive province of the federal courts.").

[15] All of the case law provided to us by the relators involved or otherwise made specific reference to federal antitrust causes of action. *See Tafflin*, 493 U.S. at 462, 110 S. Ct. at 796–97 (in context of holding that state courts have concurrent jurisdiction over civil RICO actions, noting that the Supreme Court has "interpreted § 4 of the Clayton Act to confer exclusive jurisdiction on the federal courts" (citing *Gen. Inv.*, 260 U.S. at 286–88, 43 S. Ct. at 116–17)); *Marrese*, 470 U.S. 373, 379 (in context of holding that a federal court must consider "the preclusive effect of a state court judgment in a subsequent lawsuit involving federal antitrust claims within the exclusive jurisdiction of the federal courts," noting that "[a]lthough federal antitrust claims are within the exclusive jurisdiction of the federal courts [citing *General Investment*], the Court of Appeals ruled that the dismissal of

14

alternative basis for inferring that scope of exclusive federal jurisdiction based upon an "unmistakable implication from legislative history," or "a clear incompatibility between state-court jurisdiction and federal interests."[16]  *Gulf Offshore*, 453 U.S. at 478, 101 S. Ct. at 2875.  To the contrary, legal scholarship suggests that "[t]he legislative history of the Sherman Act indicates that exclusive jurisdiction was not intended."  Note*, Exclusive Jurisdiction of the Federal Courts in Private Civil Actions*, 70 HARV. L. REV. 509, 510 n.13 (1957) (citing S. Doc.

> petitioners' complaints in state court barred them from bringing a claim based on the same facts under the Sherman Act"); *Hathorn v. Lovorn*, 457 U.S. 255, 266 n.18, 102 S. Ct. 2421, 2429 n.18 (1982) (in context of holding that state courts are authorized to decide whether the Voting Rights Act applies to a proposed change in voting procedures, noting that "although state courts lack jurisdiction to entertain suits brought pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, they often decide issues concerning the federal antitrust laws in other contexts"); *Freeman v. Bee Mach. Co*., 319 U.S. 448, 450, 63 S. Ct. 1146, 1147 (1943) (after contract claim was removed to federal court, "respondent moved to amend its declaration by adding a complaint for treble damages under § 4 of the Clayton Act"); *Blumenstock Bros. Advertising Agency v. Curtis Pub. Co.*, 252 U.S. 436, 441, 40 S. Ct. 389, 387 (1920) (in context of suit for treble damages under § 7 of the Sherman Act, observing that "the controversy concerns subject-matter limited by federal law, for which recovery can be had only in the federal courts").

[16]  The relators' petition focuses on the *Grable* test and its consideration of whether the exercise of federal jurisdiction over an overlying state-law claim would disturb "any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314, 125 S. Ct. 2368; *Minton*, 355 S.W.3d at 640.  Accordingly, their arguments are oriented towards justifying the federal interest in adjudicating the claim.  The more appropriate question is whether state courts may exercise their presumed concurrent jurisdiction without offending some federal interest.

15

No. 147, 57th Cong., 2d Sess. 311–13, 317, 320–21, 334 (1903)). And we perceive no clear incompatibility between state-court jurisdiction over the legal malpractice claim at issue and federal interests. The cardinal policy undergirding the Sherman Act is maximizing consumer welfare through the promotion of economic competition.[17] By contrast, the policy undergirding the state-law tort of legal malpractice is to compensate an injured private party for its losses. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 122 (Tex. 2009). State-court adjudication of claims alleging injuries resulting from legal malpractice does not threaten to undermine the federal interest in preventing restraints on free competition.

The claims at issue in this case are state-law malpractice claims, and they are not causes of action created or specifically authorized by federal antitrust laws.[18] An analysis applying *Grable* and *Minton* would inform the question of whether the malpractice claim may "arise under" federal antitrust law pursuant to 28 U.S.C. § 1337(a) and therefore be a candidate for concurrent federal subject-matter

---

[17]    *See, e.g.*, *Am. Needle, Inc. v. Nat'l Football League*, 130 S. Ct. 2201, 2212 (2010); *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886, 127 S. Ct. 2705, 2713 (2007); *see generally* ROBERT H. BORK, THE ANTITRUST PARADOX 50–71 (1993 ed.).

[18]    *Cf. Wilshire Oil Co. v. Riffe*, 409 F.2d 1277, 1284 (10th Cir. 1969) (distinguishing federal antitrust claim from employer's common-law right to recover antitrust fine from employees whose conduct occasioned the fine).

jurisdiction. But absent authority that state courts are prohibited from exercising jurisdiction over all claims "arising under" federal antitrust law, the *Grable* analysis does not determine whether the malpractice claim is subject to exclusive federal jurisdiction. The relators thus have made no showing that federal jurisdiction over these claims is exclusive to federal courts to the exclusion of otherwise presumed concurrent state-court jurisdiction.

We conclude that the relators have failed to demonstrate a clear abuse of the trial court's discretion. *See Canadian Helicopters*, 876 S.W.2d at 305; *Walker*, 827 S.W.2d at 837. To the contrary, we conclude that the trial court is properly exercising jurisdiction over the state-law malpractice claim.[19]

---

[19] We also note that a conclusion that federal courts have exclusive subject-matter jurisdiction over this malpractice claim would be diametrically opposed to the prior ruling in this same dispute that "federal question jurisdiction does not exist in this case, and removal was not proper on this basis." *Rx.com, Inc. v. O'Quinn*, 766 F. Supp. 2d 790, 793, 797 (S.D. Tex. 2011). If we granted the relief sought by the relators, the real parties in interest would face the circumstance of having to re-file their claims in federal district court after one federal district judge has already ruled that there is no federal subject-matter jurisdiction over the claim. A federal court—perhaps even the same federal district judge—might then be forced to either exercise jurisdiction or effectively leave the real parties judicially homeless, shunned by both state and federal courts refusing to exercise jurisdiction to resolve their claims on the merits. Such "jurisdictional ping-pong" is undesirable due to its tendency to "undermine public confidence in our judiciary" and "squander private and public resources." *Christianson*, 486 U.S. at 818–19, 108 S. Ct. at 2179.

17

## Conclusion

We conclude that Texas courts are not prohibited from exercising jurisdiction over the state-law legal malpractice claims in this case. Because we conclude that no clear abuse of discretion has been shown, we express no opinion about what circumstances would permit a private litigant to obtain review of the denial of a plea to the jurisdiction by means of a petition for writ of mandamus due to the alleged inadequacy of the remedy of appeal from a final judgment.

Accordingly, we deny the petition for writ of mandamus.


Michael Massengale
Justice


Panel consists of Justices Massengale, Brown, and Huddle.

Justice Brown, concurring.