# United States Court of Appeals for the Federal Circuit

---

**USPPS, LTD.,**
*Plaintiff-Appellant,*

**v.**

**AVERY DENNISON CORPORATION,**
*Defendant-Appellee,*

**and**

**RENNER, OTTO, BOISSELLE & SKLAR, LLP**
AND **NEIL DUCHEZ,**
*Defendants-Appellees.*

---

2011-1525

---

Appeal from the United States District Court for the Western District of Texas in case no. 07-CV-0963, Chief Judge Fred Biery.

---

Decided: April 17, 2012

---

JAMES E. WILLINGHAM, JR., Law Offices of Jim Willingham, P.C., of San Antonio, Texas, argued for plaintiff-appellant.

J. DANIEL HARKINS, Cox Smith Matthews Incorporated, of San Antonio, Texas, argued for defendant-

appellee Avery Dennison Corporation. Of counsel on the brief was LESLIE SARA HYMAN, Pulman, Cappuccio, Pullen & Benson, LLP, of San Antonio, Texas.

VAUGHAN E. WATERS, Thornton, Biechlin, Segrato, Reynolds & Guerra, L.C., of San Antonio, Texas, argued for defendants-appellees Renner, Otto, et al.

———————————

Before PROST, MAYER, and O'MALLEY, *Circuit Judges*.

Opinion for the court filed PER CURIAM. Concurring opinion filed by *Circuit Judge* PROST. Concurring opinion filed by *Circuit Judge* O'MALLEY, in which *Circuit Judge* MAYER joins.

PER CURIAM

USPPS, Ltd. ("USPPS") appeals the order of the United States District Court for the Western District of Texas dismissing its claim for breach of fiduciary duty and fraud. *See USPPS, Ltd. v. Avery Dennison Corp.*, No. SA-07-CA-963-FB, 2010 U.S. Dist. LEXIS 81707 (W.D. Tex. June 4, 2010). We affirm.

BACKGROUND

The report of the magistrate judge, which was adopted by the district court, provides a comprehensive summary of this case's long and tortuous history, and we therefore provide only a brief synopsis of the pertinent facts. *See USPPS, Ltd. v. Avery Dennison Corp.*, No. SA-07-CA-963-FB, 2010 U.S. Dist. LEXIS 84450 (W.D. Tex. Mar. 18, 2010) ("*Magistrate Report*"). In 1999, Joe Pat Beasley filed an application with the United States Patent and Trademark Office ("PTO"), seeking patent protection for personalized postage stamps. *See* U.S. Patent Application No. 09/326,712 (the "'712 application").

Beasley originally retained the Litman Law Offices, Ltd. ("Litman") to represent him at the PTO. In March 2001, the PTO issued a notice of allowance on the '712 application.

Two months later, Beasley entered into a licensing and manufacturing agreement with Avery Dennison Corporation ("Avery"). This agreement specified that Avery would "assume responsibility for prosecution of Beasley's patent application" and would "pay all future patent prosecution expenses in the ['712 application]." In May 2001, Beasley executed a "Revocation and Power of Attorney" which discharged Litman and appointed attorneys from Renner, Otto, Boisselle & Sklar, L.L.P. ("Renner") to prosecute his application. Beasley informed Daryl L. Lansdale, an attorney with Fulbright & Jaworski, L.L.P. ("Fulbright"),[1] "that he sent the ['712 application] to Avery or 'Avery Dennison's attorneys' to prosecute so [that] Avery would be the one paying the prosecution fees." *Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *44 (footnote omitted). Lansdale responded by telling "Beasley that 'having his own attorneys, who [were] familiar with the patents, continue to review the patents, probably was in his best interest.'" *Id.* (footnote omitted).[2]

When Neil DuChez, a Renner attorney, analyzed the prosecution file for the '712 application, he discovered

[1]    Fulbright represented USPPS until February 2003.

[2]    Beasley asserted that he had "no recollection of ever being advised by [Lansdale] to retain separate counsel to represent [him] in the prosecution of the patents," but he does not deny that this conversation occurred. App'x Exhibit G; *see Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *52-53.

that it contained relevant prior art that had not been disclosed to the PTO. Accordingly, DuChez filed a supplemental information disclosure statement disclosing this prior art and a second patent application (the "continuation application"). On July 16, 2001, the PTO issued a second notice of allowance on Beasley's '712 application.

In July 2001, Beasley transferred ownership of the '712 application to USPPS.[3] On August 2, 2001, USPPS and Avery entered into an agreement under which: (1) Avery would market personalized postage stamps; (2) USPPS would purchase personalized postage stamps exclusively from Avery; and (3) Avery would pay USPPS a royalty equal to five percent of sales of the personalized stamps to third parties.

In April 2002, the PTO vacated its notice of allowance for the '712 application. As part of a "quality review process," the PTO determined that the claims of the '712 application were not patentable over a prior art reference, *see* U.S. Patent No. 5,923,406, which the PTO had independently discovered. In May 2002, the PTO likewise rejected Beasley's continuation application as unpatentable over the prior art.

Soon thereafter, Terry Kerr, USPPS' president, sent email messages to Al Green, an Avery vice-president, complaining about the "lack of follow up" on USPPS' intellectual property matters and Avery's failure to include USPPS in decisions related to prosecution of the patent applications. *Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *18-19. In the fall of 2002, the PTO issued final rejections on both the '712 and the continuation applications. In December 2002, Beasley called Avery and spoke with Julie Hauger, who worked for

---

[3] Beasley serves as chairman of USPPS.

Avery's president. Hauger reported that Beasley complained that Avery had "mismanaged" his patent application and had "caused him to lose his patent." *Id.* at \*21 (internal quotation marks omitted). On December 17, 2002, Green sent Beasley and Kerr an email stating that he thought the chance of overcoming the PTO's final rejections was "remote" and that he was "unable to come up with any further claim language which would overcome the [PTO's] objections." *Id.* (internal quotation marks omitted).

In January 2003, Beasley complained to Matthew Mellis, an Avery vice-president, about Avery's handling of patent issues. According to Mellis, Beasley asserted that Avery had "mishandled" the patent applications and "had deliberately prevented him from obtaining a patent on personalized postage stamps." *Id.* at \*22 (footnote and internal quotation marks omitted). On February 14, 2003, USPPS sent Avery a memorandum entitled "A Million Dollar Opportunity Damaged." This memorandum stated that USPPS had "sustained significant monetary and other damages" as a result of Avery's "actions and omissions." It further stated that Avery's "lack of action and mismanagement of our Intellectual Property has resulted in the rejection of our patent after we had twice received an approval for issuance of the patent."

In the spring of 2003, the PTO issued notices of abandonment on both patent applications. DuChez forwarded these PTO notices to Beasley in May 2003. Avery thereafter notified USPPS that it intended to sell personalized postage stamps without further payment of royalties after the royalty agreement between Avery and Beasley expired by its own terms in August 2004. In September 2004, Beasley brought suit against Avery and Renner, alleging negligence, breach of fiduciary duty, and fraud. His complaint was dismissed, however, after the district

court concluded that Beasley lacked standing to sue because he had transferred title to the patent applications to USPPS. Beasley subsequently appealed to the United States Court of Appeals for the Fifth Circuit, but his appeal was dismissed for want of prosecution. *Beasley v. Avery Dennison Corp.*, No. 07-51311, 2008 U.S. App. LEXIS 28075 (5th Cir. Feb. 7, 2008).

On November 27, 2007, USPPS filed suit against Avery, Renner, and DuChez (collectively "the defendants"), alleging breach of fiduciary duty and fraud.[4] USPPS alleged that Avery had made representations "that Beasley as owner of the patent was the client of [Renner] with regard to the prosecution of his patent," and failed to inform "USPPS that Avery Dennison (not Beasley or USPPS) was the client." *Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *5 (internal quotation marks omitted). USPPS asserted that "it relied on the representations that Beasley was the client of Renner and DuChez when firing [Litman] and allowing Renner and DuChez to take over the patent prosecution," when in fact "Beasley and USPPS had no legal representation in the prosecution of the patent which caused injury and damages." *Id.* (footnote omitted).

On May 30, 2008, the district court issued an order dismissing USPPS' complaint as barred by the applicable four-year statute of limitations. On appeal, however, the United States Court of Appeals for the Fifth Circuit reversed. The court noted that when reviewing a trial court's dismissal under Federal Rule of Civil Procedure 12(b)(6), it was required to "accept all well-pleaded facts

---

[4] USPPS subsequently amended its complaint, adding new "collusive action claims," including conspiracy and aiding and abetting fraud and breach of fiduciary duty. *Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *6.

as true." *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 843 (5th Cir. 2009). Applying that standard, the court determined that it could not "definitively say that the discovery rule and fraudulent concealment exceptions" to the running of the limitations period did not apply to postpone the accrual date of USPPS' claim. *Id.* at 851.

On remand, a magistrate judge, at the close of limited discovery, granted the defendants' motion for summary judgment. The magistrate judge concluded that: (1) neither the discovery rule nor the fraudulent concealment doctrine served to postpone the accrual of USPPS' claims; and (2) there were no genuine issues of material fact on the causation element of USPPS' claims for fraud and breach of fiduciary duty. On June 4, 2010, the district court adopted the report and recommendations of the magistrate judge.

USPPS then again appealed to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit issued an order transferring the case to this court, explaining that "the Federal Circuit has exclusive jurisdiction of an appeal where the district court's jurisdiction was based, in whole or in part, on 28 U.S.C. § 1338." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 277 (5th Cir. 2011) (citations and internal quotation marks omitted) ("*Transfer Order*"). The court stated that "the Federal Circuit [has] held that a Texas state-law claim of attorney malpractice in a patent infringement case 'arises under' patent law for purposes of § 1338." *Id.* at 278-79. It noted, moreover, that *Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1359-62 (Fed. Cir. 2010), held that this court has jurisdiction over state-law malpractice claims where the alleged malpractice involves "a question of patentability [even] where no patent ha[s] actually issued." *Transfer Order*, 647 F.3d at 280. Because USPPS

could not "prove causation without proving the patentability of its invention," the Fifth Circuit determined that federal patent law was a necessary element of its claims. *Id.*; *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988) (emphasizing that section 1338 jurisdiction "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims").

The Fifth Circuit acknowledged that the decision to transfer USPPS' state-law tort claim to this court raised an important "federalism inquiry," *Transfer Order*, 647 F.3d at 278 n.1, and that the transfer would be appropriate only if the patent issue presented in USPPS' state-law claim rose "to the level of creating a substantial federal interest such that the Federal Circuit has exclusive appellate jurisdiction." *Id.* at 278; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (emphasizing that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"). The court concluded, however, that because of the "strong federal interest" in uniformity in the patent law that "exclusive federal jurisdiction was intended to ensure," the patent issues raised in USPPS' appeal "involve[d] a sufficiently substantial federal interest to permit federal jurisdiction over a state-law tort." *Transfer Order*, 647 F.3d at 282.

DISCUSSION

I. *Jurisdiction*

In *Davis*, an inventor sued her attorney, asserting that he had "committed malpractice by performing various acts of negligence in connection with the preparation and filing of" her U.S. patent applications and that this negligence "cost her the opportunity to secure patents on her inventions." 596 F.3d at 1360, 1361. We concluded that the district court had properly exercised section 1338 jurisdiction over Davis' state-law malpractice claim because unless she could show that her inventions were patentable, her attorney's "negligence could not have caused her to suffer any damages." *Id.* at 1361; *see* 28 U.S.C. § 1338 (providing that federal district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents"). In short, because demonstrating that her inventions were patentable was "a necessary element of one of [her] legal malpractice claims," *Davis*, 596 F.3d at 1362, Davis' "right to relief necessarily depend[ed] on resolution of a substantial question of federal patent law," *id.* at 1359 (citations and internal quotation marks omitted).

A similar analysis applies here. USPPS alleges that the defendants' malfeasance caused it to be denied a patent on personalized postage stamps. Unless USPPS can demonstrate that its invention was patentable over the prior art, however, it cannot establish that the defendants' actions "caused [it] to suffer any damages." *Id.* at 1361. Accordingly, applying *Davis*, the Fifth Circuit concluded that the exercise of section 1338 jurisdiction was appropriate.

*Davis* arguably raises important questions related to the "congressionally approved balance of federal and state judicial responsibilities," *Grable*, 545 U.S. at 314, but we

are bound by that decision unless it is overruled by an *en banc* court. *See Tex. Am. Oil Corp. v. U.S. Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc) ("This court applies the rule that earlier decisions prevail unless overruled by the court en banc, or by other controlling authority such as intervening statutory change or Supreme Court decision."). Moreover, USPPS had already brought two appeals before the United States Court of Appeals for the Fifth Circuit before its case was transferred here. For this court to refuse to adjudicate the merits of USPPS' appeal at this stage of the proceedings would subject the parties to precisely the sort of "jurisdictional ping-pong" the Supreme Court has cautioned against. *Christianson*, 486 U.S. at 818. As the Court made clear, "[u]nder law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end." *Id.* at 819.

II. *Timeliness*

We conclude that the district court correctly determined that USPPS' complaint was untimely.[5] Under Texas law, a plaintiff must bring a cause of action for fraud or breach of fiduciary duty no later than four years after the date it first accrues. Tex. Civ. Prac. & Rem. Code § 16.004(a). "In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). Here, the alleged legal injury suffered by USPPS

---

[5] On appeal, USPPS contends that the district court erred when it concluded that USPPS failed to present evidence sufficient to raise genuine issues of material fact on the causation element of its breach of fiduciary duty and fraud claims. We need not reach this issue, however, because we conclude that USPPS' suit is time-barred.

occurred no later than May 2003, when the PTO issued final notices of abandonment on both of USPPS' patent applications. USPPS did not file suit, however, until November 27, 2007, more than four years after this injury occurred.

Texas law provides two exceptions to the rule that the statute of limitations begins to run when a legal injury occurs. First, under the "discovery rule" a cause of "action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). Second, under the "fraudulent concealment" doctrine the accrual of a claim "is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *Id.* at 6.

## A. *The Discovery Rule*

The discovery rule provides a "very limited exception" to the running of the limitations period. *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). It serves to defer the accrual of a claim when "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V.*, 933 S.W.2d at 6. An injury will be deemed "inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 7; *see Colonial Penn Ins. Co. v. Mkt. Planners Ins. Agency, Inc.*, 157 F.3d 1032, 1034 (5th Cir. 1998).

As the district court correctly concluded, the discovery rule is not available to defer the accrual of USPPS' claim. By May 2003, at the latest, USPPS knew that it had lost the right to obtain a patent on personalized postage stamps and had concluded that this loss was due to

wrongdoing on the part of the defendants.  Soon after the PTO rejected USPPS' applications as unpatentable over the prior art, USPPS wrote to Avery to complain of Avery's "lack of follow-up" regarding USPPS' intellectual property.  *Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *18 (internal quotation marks omitted).  In December 2002, Beasley called Hauger, who worked for Avery's president, complaining that Avery had "mismanaged" his application and had caused him to "lose his patent" for personalized postage stamps.  *Id.* at *21 (internal quotation marks omitted).  Two months later, USPPS sent Avery a memorandum captioned "A Million Dollar Opportunity Damaged."  This memorandum stated that Avery's "lack of action and mismanagement of [USPPS'] Intellectual Property has resulted in the rejection of our patent after we had twice received an approval for issuance of the patent."  *Id.* at *25 (internal quotation marks omitted).  Thus, by May 2003, when the PTO issued final notices of abandonment on both of USPPS' applications, USPPS had not only concluded that it had lost a "million dollar opportunity" when it forfeited its patent rights, but also believed that this loss was the result of "mismanagement" and "lack of follow-up" on Avery's part.  Because USPPS knew, or should have known, by May 2003 that it had suffered an actionable injury as a result of the defendants' alleged wrongdoing, the discovery rule does not serve to defer the accrual of its claim.  *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) ("Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy.").

USPPS argues that although it might have determined, by May of 2003, that Avery and Renner acted negligently in prosecuting the '712 application, it was not

until 2004 that it discovered that the defendants acted fraudulently and in breach of their fiduciary obligations. As the Texas Supreme Court has said, however, "the discovery rule does not linger until a claimant learns of [the] actual causes" of his injury. *PPG Indus., Inc. v. JMB/Houston Ctrs. Ltd.*, 146 S.W.3d 79, 93 (Tex. 2004). USPPS knew by May 2003 not only that it had suffered an injury—the loss of its patent rights—but also had come to the conclusion that this loss was due to misconduct on the part of the defendants. Regardless of whether USPPS believed that the defendants had acted negligently, or with fraudulent intent, USPPS' cause of action accrued when it learned that it had suffered an actionable injury. *Id.* (emphasizing that a claim accrues regardless of whether a party knows the "specific cause" of his injury); *Bayou Bend Towers Council v. Manhattan Constr. Co.*, 866 S.W.2d 740, 743 (Tex. App. 1993) (explaining that "all that is required to commence the running of the limitations period is the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible"). Under Texas law, when a party learns that he has suffered a loss as a result of "the wrongful conduct of another," he has a duty to investigate the cause of that loss and to file suit in a timely manner. *KPMG Peat Marwick, L.L.P. v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999).

## B. *The Fraudulent Concealment Doctrine*

USPPS argues that it "had no patent attorney or legal representation in the prosecution of its patent," and that "[t]his lack of legal representation resulted in the loss of the patent." It contends, moreover, that the fraudulent concealment doctrine serves to toll the statute of limitations because, due to Avery's alleged misrepresentations and fraud, USPPS did not learn until 2004 that Renner was working for Avery and not for USPPS. This reason-

ing is not persuasive. The equitable doctrine of fraudulent concealment tolls the statute of limitations in situations in which "a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs . . . ." *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983); *see also Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366 (5th Cir. 2000). This doctrine, however, "only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011). Here, USPPS knew, or should have known, by at least May 2003, that Renner was working as Avery's attorney in prosecuting the '712 application. Pursuant to the 2001 agreement between Beasley and Avery, Avery agreed to "assume responsibility" for prosecution of the '712 application. *Magistrate Report*, 2010 U.S. Dist. LEXIS 84450, at *44. Beasley then informed Lansdale, an attorney from a law firm that represented USPPS until February 2003, "that he sent the ['712 application] to Avery or 'Avery Dennison's attorneys' to prosecute so [that] Avery would be the one paying the prosecution fees." *Id.* (footnote omitted). Lansdale responded by telling "Beasley that having his own attorneys, who [are] familiar with the patents [and] continue to review the patents, probably was in his best interest." *Id.* (footnote and internal quotation marks omitted).

USPPS' argument that it was unaware that Renner worked for Avery and not for USPPS is undermined by the fact that USPPS never signed a retainer agreement with Renner and never paid legal fees to Renner for its work in prosecuting the '712 application. Instead, Renner sent monthly bills to Avery for its work prosecuting the '712 application and Avery paid Renner. As early as May 2002, USPPS was complaining to Avery that Avery had

"restricted" communications between USPPS and DuChez, the Renner attorney prosecuting the '712 application. *Id.* at \*46. USPPS asserted that Avery had prevented DuChez "from communicating with [USPPS] on the same time frame" that he communicated with Avery. *Id.* (internal quotation marks omitted). Given that Avery was paying Renner's fees and had acted to restrict communications between Renner and USPPS, USPPS knew, or in the exercise of due diligence should have known, that Renner was acting as legal counsel to Avery in the prosecution of the '712 application.

A "plaintiff must, of course, exercise reasonable diligence to discover what has been hidden from him by the defendant and the period of tolling may not extend beyond the time the plaintiff actually acquired knowledge of the facts or should have acquired such knowledge by the exercise of reasonable diligence." *Leonard v. Eskew*, 731 S.W.2d 124, 128 (Tex. App. 1987). Even assuming *arguendo* that the defendants failed to disclose the fact that Renner was working for Avery, the statute of limitations was tolled only until such time as USPPS, in the exercise of reasonable diligence, should have discovered that fact.

CONCLUSION

Accordingly, the order of the United States District Court for the Western District of Texas is affirmed.

**AFFIRMED**

# United States Court of Appeals
## for the Federal Circuit

---

**USPPS, LTD.,**
*Plaintiff-Appellant,*

v.

**AVERY DENNISON CORPORATION,**
*Defendant-Appellee,*

**and**

**RENNER, OTTO, BOISSELLE & SKLAR, LLP**
AND **NEIL DUCHEZ,**
*Defendants-Appellees.*

---

2011-1525

---

Appeal from the United States District Court for the Western District of Texas in case no. 07-CV-0963, Chief Judge Fred Biery.

---

PROST, *Circuit Judge*, concurring.

Our jurisdiction over this case is not disputed, and we all agree that the Fifth Circuit's transferring the case to this court was appropriate. Judge O'Malley's concurrence, however, uses this case as a vehicle to criticize this court's previous decisions which have held that we have jurisdiction over certain patent-related malpractice cases.

Respectfully, I am reluctant to weigh in on a question that was not presented in this case and therefore, obviously, never briefed or argued. Nor am I persuaded by Judge O'Malley's arguments that our case law contradicts Supreme Court precedent. Indeed, the concurrence in the denial of the petition for rehearing en banc in *Byrne v. Wood*, No. 2011-1012, 2012 U.S. App. LEXIS 6021, at \*2-8 (Fed. Cir. Mar. 22, 2012) (Dyk, J. concurring), discussed at length why our case law comports with Supreme Court precedent. In particular, it observed that the "substantive patent law issues" implicated in these patent-based malpractice cases "necessarily make[] the issues 'substantial' within the meaning of *Christianson [v. Colt Industries Operating Corp.]*, 486 U.S. [800,] 809 [1988], and indicate[] a 'serious federal interest' in federal adjudication within the meaning of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)." *Id.* at \*4.

# United States Court of Appeals
# for the Federal Circuit

---

**USPPS, LTD.,**
*Plaintiff-Appellant,*

**v.**

**AVERY DENNISON CORPORATION,**
*Defendant-Appellee*

**and**

**RENNER, OTTO, BOISELLE & SKLAR, LLP** AND
**NEIL DUCHEZ,**
*Defendants-Appellees.*

---

2011-1525

---

Appeal from the United States District Court for the Western District of Texas in case no. 07-CV-0963, Chief Judge Fred Biery.

---

O'MALLEY, *Circuit Judge*, with whom MAYER, *Circuit Judge* joins, concurring.

Although I agree that the district court properly granted summary judgment in favor of defendants in this matter, I write separately to address the significant federalism concerns raised by our exercise of jurisdiction over these purely state law claims. *See* Slip Op. at 9 ("*Davis* arguably raises important questions related to the "congressionally approved balance of federal and state

judicial responsibilities . . . .'" (citations omitted)). I concur rather than dissent because, as the majority notes, our current case law extends our jurisdictional reach to the plaintiff's claims in this case. Specifically, because Plaintiff's fraud and breach of fiduciary duty claims require the plaintiff to prove that its invention would have received patent protection absent the defendants' allegedly unlawful conduct, our case law compels that we exercise subject matter jurisdiction over it. *See Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355 (Fed. Cir. 2010) (extending jurisdiction over a state law malpractice claim where the plaintiff would have to prove that, but for her attorney's missed patent application filing deadline, her invention would have been patentable). Our case law turns what would otherwise be a "clearly wrong" transfer decision into one that is "plausible," thus requiring this court to accept the transfer and resolve the merits of the appeal. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817-19 (1988).

Our case law requiring the exercise of jurisdiction over state law claims such as those at issue here conflicts with Supreme Court precedent, however, and should be revisited. *See Byrne v. Wood, Herron & Evans, LLP*, 2011 WL 5600640, *5 (Fed. Cir. Nov. 18, 2011) ("Although we must adhere to our precedent, we believe this court should re-evaluate the question of whether jurisdiction exists to entertain a state law malpractice claim involving the validity of a *hypothetical* patent . . . ." (emphasis in original)); *see also Byrne v. Wood, Herron & Evans, LLP*, No. 2011-1012, 2012 U.S. App. LEXIS 6021 (Fed. Cir. Mar. 22, 2012) (O'Malley, J., dissenting from denial of petition for rehearing en banc). This case exemplifies the mischief our jurisdictional over-reaching has caused in situations where a state law claim involves an underlying patent issue. Indeed, in objecting to a state court dis-

missal of a state law malpractice claim based on our case law, three dissenting Texas Supreme Court justices identified this very case as emblematic of the problems created by this court's case law. *Minton v. Gunn*, 355 S.W.3d 634, 653 (Tex. 2011) (Guzman, J., dissenting) ("[T]he Supreme Court's fears have already been realized in *USPPS*. . . . "[T]he reach of the Federal Circuit's section 1338 reasoning is uncabined, and can potentially sweep any state law case that touches on substantive patent law (or, for that matter, the other areas of law covered by section 1338, such as copyright and trademarks) irrevocably into federal court.").

I.

USPPS, Ltd. ("USPPS") filed suit in United States District Court for the Western District of Texas, citing diversity jurisdiction under 28 U.S.C. § 1332 as the sole basis for federal jurisdiction. USPPS asserted only state law claims for fraud and breach of fiduciary duty. No one disputes that these are purely state law claims for which federal law does not create a cause of action.

All parties to the case proceeded under the assumption that diversity jurisdiction provided the only basis for federal jurisdiction. Indeed, when the district court initially granted defendants' motion to dismiss, USPPS appealed to the United States Court of Appeals for the Fifth Circuit. *See USPPS, Ltd. v. Avery Dennison Corp.*, No. 08-50664, 326 Fed. Appx. 842 (5th Cir. June 17, 2009). Defendants did not challenge the correctness of that appellate route, and the Fifth Circuit did not expressly consider whether it possessed jurisdiction over the appeal. Instead, the Fifth Circuit reversed and remanded the action back to the district court. *Id.* at 851.

It was not until the second appeal that the Fifth Circuit requested supplemental briefing on whether the

Federal Circuit possesses exclusive appellate jurisdiction, ultimately concluding that jurisdiction is proper in this court and transferring the appeal here. *See USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 275-76 (5th Cir. 2011). As the majority notes, the Fifth Circuit relied heavily on three of our recent decisions in which we held that state law malpractice claims relating to an underlying patent matter properly "arose under" the patent laws. *Id.* at 278-281 (relying on *Davis*, 596 F.3d at 1361-62; *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007); *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007)). Specifically, the Fifth Circuit explained that, "[a]s in *Davis*, USPPS cannot prove causation without proving the patentability of its invention," because "[o]therwise, the cause of USPPS's loss of patent protection would be based on the simple fact that its invention could not be patented, and not on any breach of fiduciary duty by [defendants]." *Id.* at 280. The Fifth Circuit also relied on one of its prior decisions from 1997, which contained only a limited jurisdictional analysis but which the Fifth Circuit found was "nevertheless binding." *Id.* at 282 (citing *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288 (5th Cir. 1997)). Accordingly, the Fifth Circuit transferred the appeal to this court.

Having considered and decided the issue, the Fifth Circuit's decision that exclusive jurisdiction rests with the Federal Circuit is the law of the case. *See Christianson*, 486 U.S. at 817. This court, however, does not "exceed its power in revisiting that jurisdictional issue" and is "obliged to decline jurisdiction" if it concludes that the Fifth Circuit's decision is "clearly wrong." *Id.* Viewing the matter from a clean slate, without any Federal Circuit precedent on this issue, the Fifth Circuit's transfer decision is "clearly wrong." Indeed, in the absence of our

current case law, I would dissent and find that the case should proceed in the Fifth Circuit. That is true even considering the Supreme Court's warning against "jurisdictional ping-pong." *Id.* at 818. The principles that underlie the Supreme Court's concern about re-transfers – conserving private and public resources and maintaining public confidence in the judiciary – weigh in favor of keeping the case in the Fifth Circuit. That court already resolved the merits of one appeal in this matter, and the scope of its decision in that first appeal is at issue in the matter before us. *See* Appellant's Br. 7 (quoting from the Fifth Circuit's first decision and arguing that "the summary judgment evidence supports USPPS's knowledge as described in the [First Amended Complaint] used by [the Fifth Circuit] to reverse the district judge's ruling on the motion to dismiss based on limitations."). It is inefficient and unproductive for this court to hear the same case upon which the Fifth Circuit already has ruled.

Under correct application of Supreme Court case law, even a cursory review of the case reveals that it does not invoke jurisdiction under 28 U.S.C. § 1338 and, by extension, our appellate jurisdiction under § 1295.

## II.

Federal courts may exercise federal question jurisdiction over state law claims *only* in the rare case where a federal issue is "actually disputed and substantial," and where doing so will not upset "any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Thus, courts must consider whether: (1) a federal issue is a necessary element of a state law claim; (2) a federal issue is actually disputed; (3) a federal issue is substantial; and (4) exercising federal jurisdiction will disturb the balance of federal and state

judicial responsibilities. *Grable*, 545 U.S. at 314. The claims in this case fail at least the last two factors of this analysis, and, therefore, jurisdiction under Sections 1338 and 1295 is lacking. *See Byrne*, 2012 U.S. App. LEXIS 6021, at \*10 ("In choosing to exercise jurisdiction over malpractice claims arising out of patent matters, we have ignored the latter two parts of the inquiry.").

As to the third factor, the purported "patent" issue in this case is not "substantial" under *Grable* for several reasons. First, determining whether USPPS likely could have obtained a patent in light of the specific prior art the United States Patent and Trademark Office cited is a case-specific, factual inquiry, and requires only *application*, not *interpretation*, of the federal patent laws. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (distinguishing *Grable* on the ground that it presented a "nearly 'pure issue of law,'" unlike the "fact-bound and situation-specific" claim at issue in the case before it (citation omitted)); *Byrne*, 2012 U.S. App. LEXIS 6021 (same); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) ("What the Court said about *Grable* in *Empire Healthchoice* can be said here too. We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.").

Second, allowing a regional circuit court to decide this matter does not pose a threat to the uniformity of patent law because: (1) any patent issue that is decided will not affect the underlying patent rights, it will merely inform an element of the plaintiff's state law claim; (2) such a decision will not have binding effect on other patent cases; and (3) this is a private dispute that does not impair a federal agency's ability to vindicate its rights in a federal forum. *See Byrne*, 2012 U.S. App. LEXIS 6021, at \*33 ("Further, patent-related malpractice claims do not impli-

cate any underlying patent rights themselves, and instead require consideration of patent law only to inform the state law standards of causation or damages."). *See also Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1301 (11th Cir. 2008) ("[T]he state court interpretation of the gun statutes will not be controlling in numerous other cases because it will not have precedential effect in the federal system"); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (en banc) ("While the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection.").

Finally, determining whether USPPS likely could have obtained a patent absent defendants' allegedly unlawful acts does not resolve this matter; rather, it is only one piece of the causation element of USPPS's claim. Thus, federal court jurisdiction is neither necessary nor appropriate because the patent law issue presented is not substantial by any measure. *See Empire Healthchoice*, 547 U.S. 677, 701 (distinguishing *Grable* because the federal issue in *Grable* was "both dispositive of the case and would be controlling in numerous other cases"); *Byrne*, 2012 U.S. App. LEXIS 6021, at *36 ("The fact that the patent issue in a malpractice action is not the sole, dispositive issue in the case strongly cuts against the conclusion that it is a 'substantial' one.").

Not only is § 1338 jurisdiction lacking because the patent issues in USPPS's claims are not "substantial," § 1338 jurisdiction also does not lie because exercising jurisdiction would upset the balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 313-14 (explaining that the exercise of federal jurisdiction is "subject to a possible veto," even where a state law claim

contains a contested and substantial federal question, if exercising jurisdiction is not "consistent with congressional judgment about the sound division of labor between state and federal courts"). While it is true that there is a strong federal interest in the adjudication of patent infringement actions, states have a similarly strong interest in regulating attorney misconduct within their borders. Indeed, state courts are the traditional arbiter of such misconduct, which is governed by long-standing common law principles of negligence, fraud and breach of fiduciary duty. Where, as here, the resolution of any patent law issue will relate to hypothetical circumstances and neither result in a finding of either infringement or invalidity nor have any precedential effect in any patent law action, the federal interest is marginal at best. *See e.g.*, *Adventure Outdoors*, 552 F.3d at 1301 ("state court interpretation of the gun statutes . . . will not have precedential effect in the federal system." (citing *Tafflin*)).

This case demonstrates the far-reaching nature of our flawed reasoning in patent-related malpractice cases. In this case, the Fifth Circuit extended our case law to encompass the exercise of jurisdiction over claims for fraud and breach of fiduciary duty, thus confirming that our decisions in patent-related malpractice actions will continue to draw more state law causes of action into federal court. In other words,

> the Supreme Court's fears have already been realized in *USPPS*. There, the Fifth Circuit adopted the reasoning applied by the Federal Circuit in *Air Measurement* and *Immunocept* to reach the same outcome in a fraud and breach of fiduciary duty case involving patent law. [citation omitted] Put another way, the reach of the Federal Circuit's section 1338 reasoning is uncabined, and can potentially sweep any state law case that

> touches on substantive patent law (or, for that matter, the other areas of law covered by section 1338, such as copyright and trademarks) irrevocably into federal court.

*Minton v. Gunn*, 355 S.W.3d 634, 653 (Tex. 2011) (Guzman, J., dissenting). *See also Singh v. Duane Morris LLP*, 538 F.3d 334, 340 (5th Cir. 2008) (explaining that the argument for extending federal jurisdiction over malpractice claims involving a federal issue "reaches so broadly that it would sweep innumerable state-law malpractice claims into federal court."). Left unchecked and unrevised, our case law will continue to upset the balance of federal and state judicial responsibilities.

## III.

Although resolution of the jurisdictional question in this case is clear under a correct application of Supreme Court precedent, we are not working from a clean slate. Under our law as it now stands, the Fifth Circuit's decision meets the low threshold under *Christianson* of being "plausible," and we must accept the transfer and resolve the merits of this case. *Christianson*, 486 U.S. at 819 ("Under law-of-the-case principles, if the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end."). For these reasons and those spelled out in my decision from this court's order denying rehearing en banc in *Byrne*, I concur in the result, but believe our case law in this area is wrong.