In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 17-2620

GERALD D. W. NORTH,

*Plaintiff-Appellant,*

*v.*

UBIQUITY, INC., a Nevada Corporation, f/k/a, UBIQUITY
BROADCAST CORPORATION, a Delaware Corporation, f/k/a
UBIQUITY HOLDING INC., a Delaware Corporation,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-5698 — **Elaine E. Bucklo**, *Judge.*

———————————

ARGUED MAY 31, 2023 — DECIDED JUNE 26, 2023

———————————

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* For the better part of a decade Gerald North and Ubiquity, Inc. have been at loggerheads over the alleged breach of a 2006 contract. After litigating for several years in Arizona state court, North filed a second lawsuit alleging the exact same breach of contract—this time in a federal district court in Illinois. But the parties' only connection

to Illinois was the 2006 contract, which Ubiquity signed with North's former Chicago-based firm, North & Associates, rather than with North himself. The district court concluded that the contract alone was insufficient to establish personal jurisdiction over Ubiquity, so it dismissed the case. We agree.

In North's view, though, that should not be the end of the story. Invoking 28 U.S.C. § 1631, he contends the district court ought to have considered transferring the case to the Central District of California (which would have had general personal jurisdiction over Ubiquity, a California firm) instead of dismissing it outright. North is correct that the district court should have at least considered transfer before dismissing the action for lack of personal jurisdiction. But North's own representations before the district court would have fatally undermined his request that the court transfer the case. We therefore see no reason to remand for further analysis, so we affirm the district court's judgment for Ubiquity.

## I

### A

In 2006 Ubiquity, an upstart telecommunications company based in southern California, sought to expand its business nationwide. It approached Gerald North, a retired antitrust and patent lawyer, in its effort to connect with strategic partners in the telecommunications industry. Ubiquity ultimately entered into a contract with North's Illinois firm, North & Associates, in which North agreed to connect Ubiquity to some of his own industry contacts. North executed the contract in Arizona, where he lived, on behalf of his firm.

Part of the contract involved Ubiquity promising to transfer 1.5% of its outstanding shares to North & Associates as a

"commencement fee"—an equity award that would be paid regardless of how long the partnership between them lasted. As it turned out, their affiliation proved short-lived. Ubiquity terminated the agreement in February 2007, only two months after signing the contract. At that time Ubiquity had not yet transferred its shares to North & Associates. It never did.

At first North did nothing to attempt to enforce the contract. For several years he thought he could not recover any damages because Ubiquity stock was not yet worth anything. That all changed in 2013 when Ubiquity went public. Recognizing the newfound value of the equity Ubiquity had promised, North sent a letter demanding specific performance on the contract in February 2014. Ubiquity refused to issue North any shares. So in June 2014 North sued Ubiquity for breach of contract in Arizona state court.

The prolonged (and still ongoing) Arizona litigation produced a litany of motions, affidavits, and declarations from both sides of the dispute. Ubiquity sought to dismiss the Arizona lawsuit, asserting that because North & Associates—the signatory to the contract—was based in Illinois, Arizona courts lacked personal jurisdiction over claims arising from the contract. North responded by emphasizing the lawsuit's ties to Arizona, including the fact that North negotiated and executed the contract there.

B

The Arizona court ultimately denied Ubiquity's motion to dismiss for lack of personal jurisdiction. Yet North, worried about potential reversal on appeal, wanted to safeguard his interests. So he filed an identical breach-of-contract claim in the Northern District of Illinois in May 2016.

By that point Ubiquity was facing unrelated legal troubles and failed to appear in Illinois district court to defend itself. In October 2016 the district court entered a default judgment against Ubiquity totaling over $7 million—the August 2014 resale value of the shares that North & Associates would have been entitled to receive under the contract. The judgment led to a lien on Ubiquity's assets in March 2017, and two weeks after the lien went into effect, Ubiquity filed a Rule 60(b)(4) motion to vacate the default judgment and dismiss the case for lack of personal jurisdiction.

The district court agreed with Ubiquity and granted its Rule 60(b)(4) motion. The district court clearly and concisely explained that Ubiquity's only connection to Illinois was that it had contracted with North & Associates, an Illinois entity. The district court further underscored that North, by his own admissions, had negotiated, executed, and promised to perform on the contract in Arizona, not Illinois. In the end, the district court concluded that there were not sufficient contacts between Ubiquity and Illinois, vacated the default judgment, and dismissed the case for lack of personal jurisdiction. Neither North nor Ubiquity ever requested that the district court transfer the case to any other forum, and the court did not on its own consider whether transfer would be appropriate.

The district court entered its order on July 10, 2017, and North filed a timely notice of appeal on August 9. Then, on October 31, he sought a stay of the proceedings in our court while his original litigation in Arizona state court went forward. That stay remained in effect for over five years—until January 2023—by which point North's contract claim would have been time-barred in every relevant jurisdiction.

## II

We begin with the district court's determination that it lacked personal jurisdiction over Ubiquity. Because the district court made its determination "on the submission of written materials, without the benefit of an evidentiary hearing," North needed only to "make out a *prima facie* case of personal jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). He has not done so.

### A

The Supreme Court has long made clear that the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state. See *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person."). If an individual resides in a state, or if a corporation is incorporated or has its primary place of business in a state, then the courts of that state have general personal jurisdiction over any lawsuit against that individual or corporation. See *id.* at 316–17. Otherwise the question becomes whether the facts of the case at hand establish specific personal jurisdiction—or, to use the Supreme Court's terminology, whether there were "'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe*, 326 U.S. at 316). There is no question that Ubiquity is not incorporated in Illinois, nor does it have its primary place of business there. That means our focus is not on general but instead on specific personal jurisdiction.

Minimum contacts exist—and specific personal jurisdiction is established—when "the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Corporations that "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to personal jurisdiction in the latter state. *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). In those circumstances, the defendant has "manifestly [ ] availed himself of the privilege of conducting business" in the forum state, so "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 476.

But a defendant's "'random,' 'fortuitous,' or 'attenuated' contacts" with a state are not enough to establish personal jurisdiction. *Id.* at 475 (quoting *Keeton*, 465 U.S. at 774, and *World-Wide Volkswagen*, 444 U.S. at 299). "[A]n individual's contract with an out-of-state party *alone*," the Supreme Court has stressed, cannot "automatically establish sufficient minimum contacts in the other party's home forum." *Id.* at 478 (emphasis in original). In those instances courts should instead take "a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id.* at 479 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316–17 (1943)). So a proper personal jurisdiction inquiry considers "prior negotiations and contemplated future

consequences, along with the terms of the contract and the parties' actual course of dealing," instead of starting and ending with the mere existence of a contract. *Id.*

B

The district court applied these exact principles, and its analysis was spot-on.

Because personal jurisdiction is all about the defendant's contacts with the forum state, North had to show that Ubiquity had purposely directed its activities at Illinois and at its residents. He failed to do so—indeed, his complaint failed to make even a threshold, or *prima facie*, showing of personal jurisdiction. See *Purdue Research*, 338 F.3d at 782. This makes the procedural posture of Ubiquity's Rule 60(b)(4) challenge to personal jurisdiction (and related questions about the parties' burdens) irrelevant to our analysis.

North's main argument for why Illinois courts have personal jurisdiction over Ubiquity is that Ubiquity signed a contract with North & Associates, an Illinois firm. But *Burger King* makes clear that such a contract, by itself, does not establish specific personal jurisdiction. See also *id.* ("[C]ontracting with an out-of-state party alone cannot establish automatically minimum contacts in the other party's home forum.").

So North needs something more. His only fallback is an assertion in his appellate brief that Ubiquity intended to avail itself of North & Associates' Illinois-based contacts—but this naked contention lacks support in the record. Indeed, as the district court observed, North's own statements "thoroughly undercut[ ] his assertion of jurisdiction" in Illinois. In the Arizona litigation North himself emphasized that he and Ubiquity negotiated and executed the contract in Arizona, and he

even stated that he would perform on the contract "in or from Arizona." Like the district court, we see nothing in the record supporting a conclusion that Ubiquity purposely availed itself of Illinois law when it contracted with North's firm.

All this goes to show that North failed to establish that Illinois courts have personal jurisdiction over Ubiquity. We therefore affirm the district court and commend its analysis as a model of clarity.

### III

Perhaps sensing that the district court got the personal jurisdiction question right, North focuses his efforts elsewhere on appeal. He insists that even if the district court correctly found that personal jurisdiction was lacking, it should not have dismissed his case so quickly and instead shouldered an affirmative obligation to transfer the case to another venue—in particular, the Central District of California. Although North's arguments on this front merit our close attention, they ultimately do not warrant remand.

### A

We start with 28 U.S.C. § 1631, which provides that whenever a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other [ ] court … in which the action or appeal could have been brought at the time it was filed or noticed." North contends that § 1631, by its terms, required the district court, upon concluding that personal jurisdiction was lacking in Illinois, to transfer his case to the Central District of California. Everyone agrees, he explains, that California courts would have general personal jurisdiction over Ubiquity.

Ubiquity challenges North's transfer arguments on several fronts: *First*, Ubiquity questions whether the term "jurisdiction" in § 1631 encompasses personal jurisdiction or means subject matter jurisdiction only. *Second*, Ubiquity highlights that North never moved for venue transfer before the district court, so it says North waived any request to transfer. *Third*, Ubiquity contends that—even if North did not waive transfer and § 1631 applies when personal jurisdiction is lacking—the interests of justice do not require transfer in this case.

### 1. The Meaning of "Jurisdiction" in 28 U.S.C. § 1631

We see every reason to conclude that § 1631's reference to "jurisdiction" includes both subject matter and personal jurisdiction. The statute's plain language does not constrain itself to subject matter or personal jurisdiction; it speaks only of "a want of jurisdiction." The term "jurisdiction," when used without qualification, normally encompasses both subject matter and personal jurisdiction. See *Jurisdiction*, *Black's Law Dictionary* (11th ed. 2019); see also *Want of Jurisdiction*, *Black's Law Dictionary* (11th ed. 2019). Nothing in § 1631 suggests that Congress intended the term "jurisdiction" to carry a different, more limited meaning.

This conclusion also aligns with common sense. It is easy to see how a lack of personal jurisdiction—based as it is on a specific state's authority over the defendant—could be cured by transfer to another court. It is comparatively uncommon (though not entirely unheard of) that a lack of subject matter jurisdiction would be cured by transfer. See *In re IMMC Corp.*, 909 F.3d 589, 596 (3d Cir. 2018) (explaining that, while statutory limits on subject matter jurisdiction can at times be

avoided by transfer to another federal forum, constitutional limits on subject matter jurisdiction cannot be so avoided).

Furthermore, every circuit court to address this issue has agreed that § 1631's reference to "jurisdiction" encompasses personal jurisdiction as well as subject matter jurisdiction. See, *e.g.*, *Franco v. Mabe Trucking Co.*, 3 F.4th 788, 792–95 (5th Cir. 2021) (reaching this conclusion and collecting cases in agreement from the First, Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits).

We too have little difficulty concluding that § 1631 applies when either subject matter or personal jurisdiction is lacking, meaning it could apply to North's lawsuit here.

### 2.  Waiver of § 1631 Transfer

When North responded to Ubiquity's challenge to personal jurisdiction in the district court, he did not at any point suggest that transfer to the Central District of California—or any other district, for that matter—would be appropriate or desirable. Neither did North respond to the district court's dismissal with a motion for reconsideration seeking transfer. On this record, Ubiquity invites us to conclude that North's inaction amounts to waiver, such that North cannot raise transfer-related arguments on appeal.

North disagrees. He reads § 1631 to impose an independent and affirmative obligation on district courts to consider whether transfer would be appropriate irrespective of whether a party requests transfer. On this view, North could not have waived his request for transfer under § 1631.

While the issue presented is new for us, other circuits have addressed it, and their analyses provide important guidance. In particular, we are convinced by the analysis in *Danziger &*

*De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124 (3d Cir. 2020). The court focused in the first instance on the text of § 1631: "The relevant statute provides that the district court 'shall' transfer the case rather than dismiss it 'if [doing so] is in the interest of justice.'" *Id.* at 132 (alteration in original) (quoting 28 U.S.C. § 1631). The statute's plain text yields a plain conclusion: "a district court that lacks personal jurisdiction must at least consider a transfer" and "make some findings under § 1631." *Id.*

This approach makes sound sense, as many litigants who would likely benefit from § 1631 are pro se or otherwise unfamiliar with the several venue-transfer statutes in the U.S. Code. See *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999) (observing that statutes of limitations, which are avoidable by § 1631 transfer from a timely lawsuit, are "likely to be particularly acute in prisoner cases, since prisoners do not have lawyers"); see also *Paul v. INS*, 348 F.3d 43, 47 (2d Cir. 2003) (Sotomayor, J.) (explaining that "Congress intended [§ 1631] to aid litigants who were confused as to the proper forum for review"). Such litigants may not know to file a § 1631 motion, or they might confuse it with a motion to transfer under a different statute, such as § 1404(a) or § 1406(a).

Other circuits have taken the same approach. See *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001) ("Because the statute's language is mandatory, federal courts should consider transfer without motion by the parties."); see also *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 277 (5th Cir. 2011) (transferring an appeal to the Federal Circuit under § 1631 even though neither party requested transfer). And although we have not yet definitively ruled on whether district courts bear an affirmative obligation to consider transfer, we

too have made clear that district courts can transfer a case "even if not asked to do so by either party." *Phillips*, 173 F.3d at 610.

We therefore conclude that when federal courts find that they lack jurisdiction, they bear an independent obligation under § 1631 to consider whether to transfer the case—even if neither party requests transfer. As we explain next, however, that obligation is quite limited, and it is rare that a court's oversight will amount to reversible error.

### 3.  The Interest of Justice

We finally come to the heart of North's argument—that transfer of this case to the Central District of California would have been in the interest of justice, as required by § 1631. But this is where North's failure to seek transfer in the district court comes back to bite him. He did nothing to develop a record that would support his claim that transfer would be in the interest of justice, so any error the district court may have made by not considering transfer is not grounds for remand. See *Phillips*, 173 F.3d at 611.

The record that North did develop undermines his argument that transfer would be in the interest of justice. Indeed, it points in the opposite direction. We explained in *Phillips* that a "compelling reason for transfer is that the plaintiff, whose case if transferred is for statute of limitations purposes deemed by section 1631 to have been filed in the transferor court, will be time-barred if his case is dismissed and thus has to be filed anew in the right court." *Id.* at 610 (citations omitted). But North expressly represented to the district court that he could refile his case in California up until February 2018— seven months *after* the district court dismissed his Illinois

lawsuit. And the inverse of what we said in *Phillips* is also true: "If a plaintiff may, on its own, refile its case in a proper forum, 'the interests of justice' do not demand transfer." *Danziger & De Llano*, 948 F.3d at 133.

By North's own representations he had seven months within which to refile his case in the Central District of California—a proper forum. Yet he stood still. He did not refile or even move ahead with his appeal in our court, instead requesting a stay that remained in place for over five years.

North's failure to refile his case in a proper forum does not change the interests of justice. We therefore see no reason to remand this case to the district court to determine whether transfer would have been required in the interest of justice. It would not have.

B

In addition to his contention that the district court should have transferred his case under § 1631, North also points to another venue-transfer statute, 28 U.S.C. § 1404(a), that he says should have provided grounds to transfer his case. But § 1404(a), like § 1631, gives district courts authority to transfer if doing so is "in the interest of justice." Because the interests of justice do not require transfer under § 1631, they do not under § 1404(a) either.

For these reasons we AFFIRM.